NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED J. TAYLOR, | No. C 04-0356 JF (PR) |
| Plaintiff, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO COMPEL** |
| vs. | |
| RAY MORSE, et al., | (Docket Nos. 22, 37) |
| Defendants. | |

Plaintiff, a California state prisoner currently incarcerated at the Correctional Training Facility (CTF) in Soledad, California, has filed a civil rights complaint under 42 U.S.C. § 1983. On January 18, 2005, this Court reviewed the complaint and dismissed it with leave to amend because Plaintiff failed to set forth sufficient facts to state a cognizable claim for relief under § 1983. Plaintiff filed an amended complaint on February 18, 2005. The Court found that Plaintiff alleged a cognizable claim of deliberate indifference to his serious medical needs and issued an order of service on the four named Defendants. Defendants filed a motion for summary judgment on December 28, 2007, on the grounds that (1) Plaintiff has not established that Defendants were deliberately indifferent to his serious medical needs, and (2) Defendants Sinnaco, Yarbrough and Walker are entitled to

qualified immunity. Plaintiff filed an opposition to Defendants' summary judgment motion, and Defendants filed a reply. After reviewing the briefs, the Court concludes that Defendants are entitled to summary judgment and will GRANT Defendants' motion as to all claims.

## BACKGROUND

Plaintiff claims that the Defendants were deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment right against cruel and unusual punishment. The following facts are undisputed or are read in the light most favorable to Plaintiff.[1]

Plaintiff is a fifty-eight year-old male who has been diagnosed with vascular headache, high blood pressure, and hepatitis C. See Am. Compl. at 2:4-7; Duncan Decl. Ex. M. On May 15, 2003, Plaintiff met with his primary care physician, Defendant Sinnaco, complaining of headaches and dizziness without vomiting. Sinnaco Decl. ¶ 5, Dec. 27, 2007; Duncan Decl. Ex. C. Dr. Sinnaco performed routine diagnostic tests and concluded that Plaintiff suffered from a vascular headache, possibly a migraine. Sinnaco Decl. ¶ 5, Dec. 27, 2007. He prescribed Midrin to treat Plaintiff's symptoms. Id. Because Midrin contains a narcotic that may cause patients to develop a dependence on the drug, California Department of Corrections and Rehabilitation (CDCR) policy requires that Midrin be administered under observation by a correctional officer at the central medical facility ("Central"). Id. ¶ 6. Accordingly, Plaintiff was issued a medical pass allowing him to leave work three times a day to receive his medication. Am. Compl. Attach. 2.

On May 16, 2003, Defendant Morse, Plaintiff's work supervisor at the Prison Industry Authority (PIA) furniture factory, contacted Defendant Yarbrough, Senior Medical Technical Assistant (MTA), expressing concern that Plaintiff was leaving work multiple times a day to report to Central. Yarbrough Decl. ¶ 3. Morse related that Plaintiff's frequent absences were negatively affecting security at the factory as well as

---

[1] These facts are derived from the briefs filed by the parties, the exhibits attached thereto, including Plaintiff's medical records, and the declarations submitted by Defendants.

Order Granting Summary Judgment
G:\PRO-SE\SJ.JF\CR.04\Taylor356msj.wpd        2

1  Plaintiff's ability to fulfill his work responsibilities. Id. ¶ 4. Yarbrough contacted Dr.
2  Sinnaco and relayed Morse's concerns, providing the doctor with a copy of Plaintiff's
3  medical file and inquiring whether Plaintiff could be prescribed a medication that did not
4  require directly observed therapy. Id.; Sinnaco Decl. ¶ 7, Dec. 27, 2007. Dr. Sinnaco
5  reviewed Plaintiff's file and reevaluated his prescription in light of his medical history and
6  diagnostic examination the day before. Sinnaco Decl. ¶ 8, Dec. 27, 2007. The doctor
7  decided to discontinue the Midrin prescription and replace it with a Motrin prescription.
8  Id. Motrin, a brand name for ibuprofen, does not carry a risk of dependency and thus does
9  not have to be administered under observation. Id. However, the drug is known to cause
10 liver damage if taken in excess over extended periods of time. Sinnaco Decl. ¶ 12, June 13,
11 2008.
12     Plaintiff reported to work on May 16, 2003 and presented his medical pass to
13 Defendant Morse. Am. Compl. at 1:27-28. Later that day, when Plaintiff was preparing to
14 leave for the clinic, Morse informed him that the medical department had changed his
15 medication, which would now be delivered to Plaintiff in his living quarters. Id. at 2:13-
16 15. Plaintiff inquired why his medication had been changed, to which Morse replied that
17 Plaintiff had become a hindrance to production in the furniture shop. Id. at 2:21. PIA
18 Superintendent, Defendant Walker, entered the furniture shop as Plaintiff was attempting to
19 leave. Walker Decl. ¶ 6. Morse explained to Walker that Yarbrough had said it would not
20 be necessary for Plaintiff to report to Central as his prescription had been changed. Id. ¶ 5.
21 Walker noted that Plaintiff appeared to have a valid medical pass, but he refused to grant
22 permission to leave because PIA was following the orders of medical staff. Id. ¶ 6; Am.
23 Compl. at 6:6-7. Subsequently, Defendant Yarbrough explained to Plaintiff on the
24 telephone that she had spoken to Morse about his medical condition, Dr. Sinnaco had
25 changed the prescription, and the medication would be delivered to Plaintiff in the East
26 Dormitory. Yarbrough Decl. ¶ 6; Am. Compl. at 4:10-17.
27     On May 30, 2003, Dr. Grewal, another CTF staff physician, examined Plaintiff,
28 noting his complaints that Motrin was not relieving his migraine symptoms. Sinnaco Decl.

Order Granting Summary Judgment
G:\PRO-SE\SJ.JF\CR.04\Taylor356msj.wpd          3

¶ 13, Dec. 27, 2007; Duncan Decl. Ex. E. Dr. Grewal reinstated Plaintiff's Midrin prescription and ordered a sinus x-ray and eye examination. Sinnaco Decl. ¶ 13, Dec. 27, 2007. The x-ray and eye examination revealed no evidence of sinusitis, cell enlargement, cataracts, or glaucoma. Id. ¶ 14. Plaintiff was prescribed Midrin on a continuous basis until August 2004. Id. ¶ 13.

Plaintiff claims that the prescription of Motrin instead of Midrin for the two-week period between May 16, 2003 and May 30, 2003 amounted to deliberate indifference to his serious medical needs.

## DISCUSSION

### I.   Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence in opposition

Order Granting Summary Judgment
G:\PRO-SE\SJ.JF\CR.04\Taylor356msj.wpd                    4

1  to the motion is merely colorable, or is not significantly probative, summary judgment may
2  be granted.  See Liberty Lobby, 477 U.S. at 249-50.

3  The burden then shifts to the nonmoving party to "go beyond the pleadings and by
4  her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on
5  file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex
6  Corp., 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this
7  showing, "the moving party is entitled to judgment as a matter of law."  Id. at 323.

8  The court's function on a summary judgment motion is not to make credibility
9  determinations or weigh conflicting evidence with respect to a disputed material fact.  See
10  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
11  1987).  The evidence must be viewed in the light most favorable to the nonmoving party,
12  and the inferences to be drawn from the facts must be viewed in a light most favorable to
13  the nonmoving party.  See id. at 631.  It is not the task of the district court to scour the
14  record in search of a genuine issue of triable fact.  Keenan v. Allan, 91 F.3d 1275, 1279
15  (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable
16  particularity the evidence that precludes summary judgment.  Id.  If the nonmoving party
17  fails to do so, the district court may grant summary judgment in favor of the moving party.
18  See id.; see, e.g., Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028-29 (9th
19  Cir. 2001).

20  **II.    Plaintiff's Claims**

21  Plaintiff complains that Defendants were deliberately indifferent to his serious
22  medical needs by changing his prescription from Midrin to Motrin.  As to Defendant
23  Sinnaco, Plaintiff complains that the doctor unreasonably changed his medication without
24  examination.  Am. Compl. at 7:3-7.  Plaintiff claims that Defendant Yarbrough exceeded
25  her authority by maliciously getting the medical department to change his prescription,
26  contravening his doctor's orders and causing harm to his health.  Id. at 5:8-15.  He alleges
27  that Yarbrough further violated his confidentiality rights by disclosing his medical file
28  without authorization.  Id. at 5:18-23.  Plaintiff contends that Defendant Morse personally

Order Granting Summary Judgment
G:\PRO-SE\SJ.JF\CR.04\Taylor356msj.wpd            5

1  interfered with his prescribed treatment without medical authority, causing him needless
2  pain and suffering. Id. at 2:26-3:4. As to Defendant Walker, Plaintiff asserts that the
3  superintendent knowingly "turned a blind eye" to the wrongs committed by his
4  subordinates, and should have exerted his authority over the situation. Id. at 6:7-20.

5  Deliberate indifference to serious medical needs violates the Eighth Amendment's
6  proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104
7  (1976). A determination of "deliberate indifference" involves an examination of two
8  elements: the seriousness of the prisoner's medical need and the nature of the defendant's
9  response to that need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled
10 on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en
11 banc).

12 A serious medical need exists if the failure to treat a prisoner's condition could
13 result in further significant injury or the "unnecessary and wanton infliction of pain." Id.
14 (quoting Estelle, 429 U.S. at 104). The existence of an injury that a reasonable doctor or
15 patient would find important and worthy of comment or treatment; the presence of a
16 medical condition that significantly affects an individual's daily activities; or the existence
17 of chronic and substantial pain are examples of indications that a prisoner has a serious
18 need for medical treatment. Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332,
19 1337-41 (9th Cir. 1990)).

20 A prison official is deliberately indifferent if he knows that a prisoner faces a
21 substantial risk of serious harm and disregards that risk by failing to take reasonable steps
22 to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). In order for deliberate
23 indifference to be established, there must be a purposeful act or failure to act on the part of
24 the defendant and resulting harm. See McGuckin, 974 F.2d at 1060.

25 "A difference of opinion between a prisoner-patient and prison medical authorities
26 regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d
27 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of
28 medical opinion as to the need to pursue one course of treatment over another is

Order Granting Summary Judgment
G:\PRO-SE\SJ.JF\CR.04\Taylor356msj.wpd           6

insufficient, as a matter of law, to establish deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir. 2004). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health. See id. at 1058. In addition, a claim of negligence is insufficient to make out a violation of the Eighth Amendment. See id. at 1060-61.

Applying these principles to the instant case, the Court concludes that Plaintiff's claims against Defendants are appropriate for summary judgment. Assuming that Plaintiff's migraines constituted a "serious" medical condition, see McGuckin, 974 F.2d at 1059-60, there is no evidence that Defendants were deliberately indifferent to his needs and consciously disregarded an excessive risk to Plaintiff's health by changing his pain medication. See Farmer, 511 U.S. at 837.

Although it is undisputed that Motrin ultimately proved to be ineffective in alleviating Plaintiff's symptoms, see Sinnaco Decl. ¶ 13, Dec. 27, 2007, there is no evidence that Dr. Sinnaco was aware that this would be the case at the time he prescribed Motrin. On the contrary, Defendants have presented evidence, uncontradicted by Plaintiff, that Dr. Sinnaco changed the prescription only after thoroughly evaluating Plaintiff's medical file and concluding that Motrin would be a safe, effective treatment for Plaintiff's symptoms. Id. ¶ 8. Dr. Sinnaco states that he first looked at the "ALT" levels in Plaintiff's blood to assess whether Plaintiff showed any signs of liver damage, finding that Plaintiff's liver was functioning normally.[2] Id. ¶ 10. He then reviewed Plaintiff's history of high blood pressure, determining that the medication he had prescribed earlier to treat the high blood pressure also had the prophylactic effect of preventing migraines. Id. ¶ 11. Based on these findings, the doctor concluded that Motrin, taken in the recommended dosage,

---

[2] "ALT" (alanine transaminase) is an enzyme involved in the metabolism of the amino acid alanine. When the liver is damaged or diseased, it releases ALT into the bloodstream, causing the ALT levels to rise. Taylor's blood tests indicated that his ALT levels were in the normal range. Sinnaco Decl. ¶ 5, June 13, 2008.

Order Granting Summary Judgment
G:\PRO-SE\SJ.JF\CR.04\Taylor356msj.wpd     7

1  would not adversely affect Plaintiff's hepatitis C or high blood pressure, but would
2  effectively treat his pain symptoms. Id. ¶ 12. Furthermore, the doctor noted the added
3  benefit that Motrin did not create a risk of dependency, unlike Midrin. Id. ¶ 8. There is no
4  evidence from this record that Dr. Sinnaco was aware that Motrin would be less effective
5  than Midrin, or that he changed the prescription in conscious disregard of Plaintiff's
6  medical needs.

7  Moreover, the evidence indicates that Dr. Sinnaco avoided any risk of harm to
8  Plaintiff's liver. Plaintiff has not presented any evidence indicating that the two weeks
9  during which he took Motrin resulted in damage to his liver. Though liver damage is a
10  known side effect of Motrin, Midrin also poses such a risk. Sinnaco Decl ¶¶ 8-9, June 13,
11  2008. According to Dr. Sinnaco, both medications were equally effective forms of pain
12  relief that carried similar known risks for hepatitis C patients. Id. ¶ 10. As described
13  above, prior to prescribing Motrin, Dr. Sinnaco tested Plaintiff's liver to be sure it was in
14  sound enough to tolerate taking Motrin. He exercised his professional medical judgment in
15  choosing to prescribe Motrin instead of Midrin. Id. ¶ 11. Furthermore, the undisputed
16  evidence indicates that Plaintiff was not kept on Motrin for an unnecessarily protracted
17  period of time. Plaintiff was prescribed Motrin for about two weeks, from May 16, 2003 to
18  May 30, 2003. Sinnaco Decl. ¶ 12, Dec. 27, 2007. Then, at the end of that period, Plaintiff
19  met with Dr. Grewal and complained that the Motrin was not helping his symptoms, and
20  Dr. Grewal reinstated the Midrin prescription that day. Id. ¶ 13; Opp. Br. Ex. N. This
21  evidence shows that as soon as it became known that Motrin was an ineffective treatment
22  for Plaintiff, CTF staff responded appropriately in accordance with his needs.

23  The parties dispute whether Plaintiff had already been taking Midrin prior to the
24  May 15, 2003 appointment, which is relevant to the doctor's knowledge of how Plaintiff
25  had been responding to that choice of treatment. See Sinnaco Decl. ¶ 8, Dec. 27, 2007;
26  Opp. Br. at 3:1-3. The medical records before the Court do not resolve the dispute; they
27  only confirm that Midrin was prescribed on May 15, 2003, discontinued on May 16, 2003,
28  and reinstated on May 30, 2003. Opp. Br. Exs. M, N. The factual dispute is immaterial,

Order Granting Summary Judgment
G:\PRO-SE\SJ.JF\CR.04\Taylor356msj.wpd                8

however, as this case concerns the appropriateness of the decision to prescribe Motrin as an alternative to Midrin. Whether or not Plaintiff had taken Midrin in the past, the effectiveness of Motrin in relieving Plaintiff's pain could not have been known to Defendants until after Plaintiff had tried it. Indeed, as soon as Plaintiff had taken Motrin for two weeks and reported that it was not helping his headaches, his treating physician reinstated the Midrin prescription without incident. See Sinnaco Decl. ¶ 13, Dec. 27, 2007.

Plaintiff's allegations against Defendant Yarbrough also fail. Plaintiff first suggests that she herself had the prescription changed, exceeding her authority as a Senior MTA by performing tasks beyond her training as a non-physician. See Am. Compl. at 4:26-5:8. There is no evidence to support this claim. It is undisputed that Yarbrough contacted Dr. Sinnaco concerning Plaintiff's treatment plan and related Morse's concerns about Plaintiff having to leave work throughout the day. Yarbrough Decl. ¶ 13; Sinnaco Decl. ¶ 7, Dec. 27, 2007; Am. Compl. at 4:13-15. Defendants have presented evidence that it was Dr. Sinnaco who made the ultimate decision to change Plaintiff's prescription, not Yarbrough. Sinnaco Decl. ¶¶ 8, 12, Dec. 27, 2007. Plaintiff makes conclusory allegations, but presents no evidence, to the contrary.

Plaintiff also claims that Yarbrough's disclosure of his medical file to unnamed "non-medical personnel" violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), which provides for a fine and/or imprisonment of any person who violates the Act's privacy rules. Opp. Br. at 7:21-8:2; see 42 U.S.C. § 1320d-6. Plaintiff has not specified which "non-medical" recipients he refers to, and there is no evidence that Yarbrough provided Plaintiff's file to anyone except Dr. Sinnaco.[3] Yarbrough Decl. ¶ 4.

---

[3] Plaintiff states in an attachment to the amended complaint that he was "surprised that [Morse] was aware of [his] medical condition," suggesting that Morse was the non-medical recipient to whom Yarbrough allegedly disclosed Plaintiff's confidential medical information. Am. Compl. Attach 1. There is no indication, however, that Morse received a copy of Plaintiff's medical records. Nor is there evidence that Morse was informed of any details about Plaintiff's condition beyond the fact that Plaintiff was taking headache medication requiring him to leave work three times a day. There is no reason why Morse, as PIA supervisor in charge of monitoring Plaintiff's attendance and performance at the factory, should not have been privy to this information.

1  Reporting information about Plaintiff's medical care to his treating physician was well
2  within Yarbrough's responsibilities as a Senior MTA. Id. ¶ 2. In any event, there is no
3  private right of action to enforce HIPAA privacy rights. 1 Med. Records Privacy Under
4  HIPAA (MB) §§ 1.01, 17.03 (2008); see Univ. of Colo. Hosp. Auth. v. Denver Publ'g Co.,
5  340 F. Supp. 2d 1142, 1144-45 (D. Colo. 2004) (holding that HIPAA statutory text and
6  structure display no intent to create a private right of action, and noting that Act expressly
7  provides a method for enforcing prohibitions, i.e., punitive fines and/or imprisonment,
8  which indicates Congress did not intend to allow an additional private remedy). Because
9  there is no such right, Plaintiff's HIPAA claim is not cognizable under 42 U.S.C. § 1983.

10  Defendant Morse was not deliberately indifferent to Plaintiff's medical condition.
11  As Plaintiff's supervisor at the furniture factory, he had a legitimate interest in Plaintiff's
12  productivity as a worker as well as in the security of the furniture factory. See Yarbrough
13  Decl. ¶ 4. He acted reasonably in expressing his concerns to Yarbrough, who as a Senior
14  MTA was responsible for communicating with physicians about inmates' medical care.
15  See id. ¶ 2. There is no evidence that Morse doubted the efficacy of Motrin as opposed to
16  Midrin or had any basis for making such a medical judgment in the first place. His reliance
17  on the information he received from medical personnel, Yabrough and Dr. Sinnaco, was
18  justified. And, contrary to Plaintiff's claim that Morse's conduct amounted to a
19  "systematic denial" of medical treatment for the sake of maintaining factory productivity
20  and security, Plaintiff was not denied or delayed treatment; his new prescription was
21  available that day. See Am. Compl. at 4:6-7, 4:16-17; Reply Br. at 7:6-13.

22  Plaintiff's claims against Defendant Walker are also meritless. Whereas Plaintiff
23  asserts that Walker "turned a blind eye" to the conduct of his subordinates, Am. Compl. at
24  6:8-10, the record shows that Walker reasonably relied upon the information he received
25  from Morse in denying Plaintiff's requests to leave the furniture factory. See Walker Decl.
26  ¶ 5. There is no evidence that Walker had reason to doubt Morse's accurate explanation
27  that the medical department had changed Plaintiff's medication, making it unnecessary for
28  Plaintiff to leave the factory. When Walker arrived at the scene, he explained to Plaintiff

that the PIA staff did not have authority to change his medication, but the PIA was following orders of the medical staff in not allowing Taylor to report to Central. Id. ¶ 6. This was an accurate explanation of the situation and an appropriate response to Plaintiff's inquiries. Moreover, Plaintiff's assertion that Walker should be held liable on the ground that he was Morse's supervisor is legally unsound: under no circumstances is there respondeat superior liability under 42 U.S.C. § 1983. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In sum, Plaintiff has failed to raise a genuine issue of material fact as to whether Defendants were deliberately indifferent to his medical needs. Consequently, Defendants are entitled to summary judgment of Plaintiff's claims.[4]

**III.   Motion to Compel**

Plaintiff filed a motion to compel discovery on April 24, 2008. Discovery had been stayed, however, on April 23, 2008, on Defendants' motion on the grounds that they asserted a qualified immunity defense. See Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (it is well settled that a stay of discovery should be granted until the threshold question of qualified immunity is decided). Plaintiff's motion to compel is accordingly DENIED.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. Plaintiff's motion to compel is DENIED. The Clerk of Court shall terminate Docket Nos. 22 and 37, enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: 8/12/08

JEREMY FOGEL
United States District Judge

---

[4] Because the Court finds that no constitutional violation occurred, it is not necessary to reach Defendants' qualified immunity argument.

Order Granting Summary Judgment
G:\PRO-SE\SJ.JF\CR.04\Taylor356msj.wpd                11